### Town of Normal v. Mary L. Bright.

1. CONTRIBUTORY NEGLIGENCE—*what does not establish, in action for personal injuries arising from a defective sidewalk.* The existence of another route does not establish contributory negligence; such fact may go to the jury who are entitled to consider it in determining the question whether the plaintiff was guilty of contributory negligence.

2. REPAIRS—*when offer of evidence of, made after accident, not ground for reversal.* An attempt to show that the sidewalk in question was repaired after the accident sued upon is not ground for reversal where neither bad faith nor prejudice appears.

Action on the case for personal injuries. Appeal from the Circuit Court of McLean County; the Hon. COLOSTIN D. MYERS, Judge, presiding. Heard in this court at the November term, 1905. Affirmed. Opinion filed March 20, 1906.

HART & FLEMING, for appellant.

LILLARD & WILLIAMS, for appellee.

MR. JUSTICE RAMSAY delivered the opinion of the court.

Mary L. Bright, the appellee, brought suit against the town of Normal to recover damages resulting to her from a personal injury alleged to have been sustained by reason of a defective street crossing in the town of Normal. The jury returned a verdict in appellee s favor in the sum of $1,350 upon which the court rendered a judgment. The town appeals.

The injury complained of happened to appellee while she was attempting, as alleged, to cross a ditch or waterway in what is called Linden street in the said town, to reach the west side of said street, which intersects Lincoln street at that point. The ditch was in, and near the west side of Linden street and ran north and south. Over it was a crossing of one or two planks or boards lying unfastened at the ends upon which it is claimed appellee attempted to cross when she fell and was injured.

It appears from the evidence that appellee, in company with her husband, and some friends, was crossing said street intersection diagonally from northeast to southwest in order to catch a street car to her home; that it was dark and stormy and the street and crossing muddy. That the crossing was a poor one and in bad condition and that appellee was permanently injured, appellant does not seriously dispute, but seeks to escape liability upon other grounds.

Appellant first argues, and at great length, that the evidence does not show that appellee fell while she was on the crossing; but that she slipped in the mud before she got to the crossing and fell in the ditch. This contention relates solely to a question of fact which was one for the jury to decide. An inspection of the record shows that appellee testified in substance that "We started across and that was where I fell * * * There was a little board or a sidewalk, or a plank or a board * * * I went to go across and my left foot slipped and went in the ditch; my knee

struck a board or plank across the ditch." This testimony
of appellee was in no way disputed and tends strongly to
show that appellee was *upon* the crossing when she fell.
She is also corroborated by the testimony of her husband
who stated that his wife's knee was hurt. "It was bruised
in the knee cap on the inside, I think it was." This bruise on
the inside of the knee tends to show that appellee slipped in
the manner she described and hurt the knee in the fall. We
think the jury were fully warranted in finding that appellee
suffered the injury from the fall *while* she was on the cross-
ing and attempting to pass over it.

Appellant next contends that appellee failed to show by a
preponderance of the evidence that the town authorities had
any notice that the crossing was dangerous. Upon this
question there was a conflict in the evidence. Appellee
was hurt in July, 1904. William Bright testified that
in March or April, before he notified Yazel, the street
commissioner of the town of Normal, of the dangerous con-
dition of the crossing and while Yazel emphatically de-
nies any such conversation, it appears from his own testi-
mony that he knew of the condition of the crossing, for he
says: "There was no plank crossing there, only across the
ditches at the place where the accident happened. The
board on the east side had no bearing to it. It was over a
ditch; the ditch was three or three and a half feet wide; the
ditch was made by a road grader." Yazel had been street
commissioner of the town ever since 1897, with the
exception of the year 1902, and from what he testified to,
seems to have had a fair understanding of the true situation
at the place of the accident. Certainly we cannot say upon
that question that the verdict is against the manifest weight
of the evidence.

Appellant's assignment of error that appellee was not in
the exercise of due care at the time of the injury does not
seem to us to be sustained by the evidence. The night was
dark and threatening; the lights, if any, were very uncer-
tain; the street muddy and wet; the crossing was one which
appellee had a right to use; and it was fairly a question for

the jury to say whether or not appellee was in the exercise of due care for her own safety. The record discloses no evidence that appellee was careless or negligent; but upon the contrary it would seem that she did what any person of ordinary caution would in all likelihood have done under the same circumstances.

There is no force in the claim of appellant that it was the duty of appellee to travel or go by some route other than the one she took and that her failure to do so was negligence upon her part. It was competent for appellant to show upon the trial that there was another route and that appellee knew of the dangerous or unsafe condition, if true, of the route she took, and knowledge of such condition upon her part and proof of such other route were both circumstances which the jury had a right to consider in determining whether or not appellee was in the exercise of due care; that rule, however, extends no farther than that and leaves the question of due care for the jury to determine under all the evidence. City of Sandwich v. Dolan, 133 Ill., 177.

Appellee testified that she did not know anything about the condition of the crossing: "Never paid any attention to it; I hardly ever went over it. Don't remember whether I was over it before or not."

Under the authority above cited, these circumstances were proper for the jury to consider and weigh. They have found that there was no want of due care upon the part of appellee and we do not feel disposed to disturb the verdict upon that ground.

Appellant next contends that this cause should be reversed because appellee persisted in getting before the jury the fact that the town had put in a new crossing at the place in question after the accident to appellee. The practice criticised cannot be too severely condemned, when engaged in for the purpose of influencing the jury, and we would not hesitate to reverse this cause upon that ground if we thought such had been the result; but upon an inspection of the record itself we do not think that the action complained of was so wrongful as to warrant a reversal.

31

When the question and answer were first made the court sustained an objection to the question and excluded the answer. After the purpose of the offer was stated by appellee the court again sustained the objection and required appellee to state any further claim along that line to the court out of the hearing of the jury. The court seems to have acted fairly in the matter and his action in this respect seems to have been intended to keep from the jury any prejudice that appellant may have thought appellee's conduct was intended to produce. Furthermore, the court, in its first instruction given for defendant, told the jury that in determining whether or not appellant was negligent, they should not consider the fact (if it be a fact) that appellant had repaired the crossing after the injury.

Appellant has criticised at great length the action of the trial court, in the giving of each and every instruction read to the jury for appellee, and in the refusal of twelve instructions offered by appellant. The court gave eight instructions for appellee and six for appellant which fully covered every question of law in the case.

We have fully and carefully considered the objections of appellant and are led to conclude that there was no error in the action of the court in the refusal of instructions and that the fourteen instructions given, as a series, stated the law governing the case fairly and with substantial accuracy.

There is no prejudicial error in this record and the judgment is affirmed.

*Affirmed.*